******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PALMER, J., concurring in the judgment. I agree with the majority that the Appellate Court properly affirmed the conviction of the defendant, Todd R. Romanko. I disagree, however, with the majority's conclusion that the Appellate Court properly determined that the trial court did not abuse its discretion when it precluded the defendant from performing the walk and turn and the one leg stand field sobriety tests in the presence of the jury.

The majority reaches this conclusion on the basis of its determination that the defendant's claim on appeal was never raised in the trial court. Specifically, the majority asserts that, although the defendant now contends that he sought to perform the field sobriety tests at issue to demonstrate for the jury that he is unable to perform them due to a preexisting knee injury, "[t]he colloquy between the court and the parties reveals that both the court and the parties understood that the purpose of the proposed evidence was to reenact [those] tests." Text accompanying footnote 9 of the majority opinion. The majority then explains that, because the purpose of the demonstration was to reenact the defendant's performance of the tests, and not, as the defendant claims, to demonstrate that he is unable to perform them even in a sober state, under any conditions; see footnote 9 of the majority opinion; the trial court did not abuse its discretion in precluding the demonstration because it was not possible to replicate in court the conditions that existed when the defendant performed the tests at the time of his arrest.[1]

I disagree with the majority because the trial transcript reveals that the purpose of the proposed demonstration was to establish that the defendant is unable to perform the tests even under the best of conditions and, therefore, to bolster his claim that it was his injury, and not his allegedly intoxicated condition, that caused him to fail the sobriety tests on the night of his arrest. Because the conditions in the courtroom were perfectly adequate to permit such a demonstration, I agree with the defendant that the trial court abused its discretion in precluding it. I nevertheless concur in the judgment because there is no reasonable possibility that the jury would have found the defendant not guilty even if he had been allowed to perform the tests at trial.

As the majority explains, the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs. At trial, the defendant testified that he was unable to perform the mobility based field sobriety tests that were administered to him at the time of his arrest due to a preexisting knee injury. Specifically, when defense counsel asked him whether the arresting officer "wanted [him] to per-

form a test" and whether he was "comfortable doing that test," the defendant responded: "No. . . . I'm not comfortable with that. I told him that I wouldn't be able to do it. I . . . five years before . . . hurt my leg really bad; my knee went out of socket when I flipped over a dirt bike on a road." Defense counsel then turned to the court and stated: "Your Honor, at this time, [the] defense would request [that] demonstrative evidence be introduced." The court responded that it would prefer to view the proffered demonstration outside the presence of the jury and excused the jury from the courtroom. After the jury was excused, defense counsel told the court that the defendant "would like to show the jury how [he] performed the [heel to toe and one leg stand field sobriety] test[s] physically." The assistant state's attorney objected to this demonstration, arguing that it was "extremely inappropriate. He's asking to try to perform a test today that he was asked to perform a year ago. . . . It's not proper. He can do anything he wants now. He can do cartwheels now if he wishes, and I don't see how that's going to explain how he performed the test on [the night of his arrest]." The court then asked defense counsel how he could guarantee that it would be a fair and accurate representation of the defendant's performance of the tests. Defense counsel responded: "Well, the jury can see that this is not occurring on that date, Your Honor. The jury can take into account that [this] is a present physical [demonstration and that the defendant's] performance of it is similar if not identical to that day since, in a sober condition, [the] defendant performs the test the same way." The court then asked defense counsel how the jury would be able to compare the two performances. Defense counsel responded that the jurors already had heard the testimony of the arresting officer, who had described "what the [defendant] looked like when he performed the test . . . ." The court then asked defense counsel whether he was "claiming that [the defendant] is somehow an expert on these tests and can enlighten the jury somehow . . . . [A]m I missing something?" Defense counsel responded that the defendant was not claiming to be an expert but was simply a person with "a disability," which the jurors should be allowed to see "for themselves" so that they could properly decide "whether he's credible or not . . . ." When defense counsel finished speaking, the court stated that it was "not going to allow that kind of demonstrative evidence, basically, because we cannot recreate the scene. It would be inappropriate to have the defendant demonstrate what he thinks occurred on that night."

Contrary to the majority, I do not believe that the defense was merely asking the court to allow the defendant to "reenact" his performance of the tests on the night of the arrest. To the contrary, it is apparent that the defense was requesting to have the defendant per-

form the tests in the courtroom so that the jury could judge for itself whether, as the defendant claimed, his knee injury prevented him from performing such tests even in a sober condition. I therefore believe it is inaccurate for the majority to assert that even defense counsel "understood that the purpose of the proposed evidence was to reenact the walk and turn and the one leg stand tests"; text accompanying footnote 9 of the majority opinion; and that "defense counsel repeatedly indicated that the purpose of the offer was to reenact the defendant's performance of the tests." Not only did defense counsel never use the words "reenact" or "reenactment," he plainly stated that the jury would understand that what they were seeing was a "present physical [demonstration]," the point of which was to show how the defendant's disability affects his ability to perform a field sobriety test, intoxicated or sober. Moreover, to the extent that defense counsel considered the demonstration to be something akin to a reenactment, it was due to the fact that, according to defense counsel, the defendant's performance would be "similar if not identical" to the performance he gave on the night of his arrest *because he undoubtedly would be unable to perform the tests due to his disability.*

Even if, as the majority contends, the court and the parties were in agreement that the demonstration was intended to be a simple reenactment of the tests, the majority fails to explain why the trial court properly concluded that the dissimilarity between the conditions in court and the conditions that existed on the night of the arrest constituted cause to disallow the demonstration. Nor did the trial court offer any explanation for its decision. In fact, the conditions in the courtroom were perfectly adequate to permit the proffered demonstration. Indeed, this is not a case in which the defendant contended that external conditions, such as an uneven road surface or inclement weather, impeded his ability to perform a field sobriety test. If it was, then I believe it would have been perfectly proper for the trial court to preclude the demonstration on the ground that the conditions required to ensure the reliability and accuracy of the demonstration could not be replicated in court. The defendant, however, claimed that a knee injury prevented him from performing the tests at issue and that that was the reason he failed the tests. In view of the nature of this claim, all that was needed to ensure a reasonably fair and accurate demonstration was the defendant and a flat surface for him to walk on.[2]

I concur in the judgment, however, because the trial court's error in precluding the proffered demonstration was harmless by any measure. As the majority notes, shortly before his arrest, the defendant entered the home of a complete stranger, Cheryl Byrne, in a disheveled state, appearing glossy eyed and looking for someone by the name of "Gerry." He left only when confronted by Byrne's German shepherd dog. Byrne wrote

down the defendant's license plate number and immediately contacted the police. Shortly thereafter, a Farmington police officer spotted the defendant's car swerving and crossing the yellow median. After the officer pulled the defendant over and approached his vehicle, the officer observed that the defendant's breath smelled of alcohol, and that he exhibited slurred speech and had an open twenty-four ounce beer can on the floor of the vehicle. The defendant also admitted to having been at a bar earlier that evening. In light of this overwhelming evidence of guilt, it is clear that, even if the defendant had been permitted to demonstrate for the jury how he performs the field sobriety tests, and even if the jury had believed that he was unable to perform them due to a preexisting knee injury, it nevertheless would have found him guilty of the charged offense. Accordingly, I concur in the judgment.

[1] As the majority explains, when a physical demonstration is offered for the purpose of recreating the events at issue at trial, "the demonstration must be performed under substantially similar conditions so that the rendition is reasonably fair and accurate." C. Tait & E. Prescott, Tait's Handbook of Connecticut Evidence (5th Ed. 2014) § 11.18, pp. 744–45.

[2] Indeed, as the defendant argues, "performing the field sobriety tests in a lit, flat, debris-free courtroom in the middle of the day actually constitute[d] better conditions than those under which [he] performed [the tests]" on the night of his arrest.